UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RICHARD GEROUX,

       Plaintiff,

v.                                      Case No. 2:08-cv-00184
                                       HON. R. ALLAN EDGAR

ASSURANT, INC., UNION SECURITY
INSURANCE COMPANY,

       Defendants.

_____/

## MEMORANDUM

       Plaintiff Richard Geroux initially brought a complaint for unpaid benefits pursuant to

long-term disability coverage provided by his employer, the Keweenaw Bay Indian Community

("KBIC"), in the Tribal Court of the Keweenaw Bay Indian Community, L'Anse Reservation,

Michigan.  [Court Doc. No. 1, Complaint].  Plaintiff sought compensation for alleged

underpayment of benefits under the policy of "approximately $230.39 per month since December

21, 1982."  Plaintiff's complaint does not mention any claims pursuant to the Employee

Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").

       Defendants Assurant, Inc. ("Assurant") and Union Security Insurance Company ("Union

Security") (collectively "Defendants") removed Plaintiff's case to this court on the basis of

federal question jurisdiction, claiming that Plaintiff's claims were covered by ERISA.  Defendant

Union Security answered Plaintiff's complaint and brought a counterclaim for declaratory

judgment pursuant to 28 U.S.C. § 2201 seeking a declaration from this court that it is the

exclusive forum for Plaintiff's claims and that the tribal court lacks jurisdiction over Plaintiff's

claims.  The counterclaim further asserted that Union Security should not be required to exhaust

its claims in tribal court because that court lacks jurisdiction over ERISA claims.

This court detailed the procedural history of this case in its November 23, 2009 memorandum. [Court Doc. No. 57]. As of that date the parties had failed to supply additional evidence and briefing despite this court's order denying further extensions of time [Court Doc. No. 54] and despite having had nearly a year in which to conduct jurisdictional discovery. The court thus granted the motion to remand the matter to tribal court and dismissed the defendants' counterclaim. [Court Doc. No. 56]. It was only *after* this court's grant of the motion for remand that the Defendants presented this court with further additional evidence supporting their position regarding this court's jurisdiction. [Court Doc. Nos. 57, 58].

## I.    Background

The complaint asserts that Plaintiff is Native American and that he is a former employee and member of the KBIC. Complaint, II, ¶ 2. The Keweenaw Community is located in Baraga and Marquette County, Michigan. Plaintiff claims that he is a third-party beneficiary of an insurance policy between the KBIC and Mutual Benefit Life Insurance Company ("Mutual Benefit") and its successors in interest, Defendants Union Security and Assurant.

Plaintiff asserts that on June 1, 1980 Mutual Benefit issued Group Policy #G25012, Certificate #311 ("Policy") for the Keweenaw Community. The insurance provided long-term disability insurance for employees of the community. Plaintiff asserts that the coverage was "designed to provide benefits of 60% of an individual's monthly earnings up to a monthly payment limit of 70% of that individual's monthly earnings." Complaint, ¶ 8.

Plaintiff contends that he was injured while he was working for the KBIC on December 21, 1982. Complaint, ¶ 10. The injury allegedly led to his permanent disability. He asserts that

at the time of his injury, his monthly earnings were $2,433.98 and that his monthly insurance

benefits should have been $1,460.39.  Plaintiff asserts that the Policy provided that increases in

Social Security benefits pursuant to the Social Security Act would not affect the amount of

benefits available pursuant to the Policy.  Complaint, ¶¶ 9, 11.  He contends that he has received

under payments  "of $81.00 per month from 1/1/86-12/31/88, of $229.00 from 1/1/89 - 12/31/91,

of $335.00 from 1/1/92 - 1/31/2007 and of $367.00 from 2/1/2007 through the present."

Complaint, ¶ 5.

Defendants removed Plaintiff's case to this Court, claiming that his claims are preempted

by ERISA and that, as such, the tribal court lacks jurisdiction over Plaintiff's claims.  Plaintiff

moved to remand the case to tribal court on August 9, 2008.  [Court Doc. No. 7].  This is the

issue still pending before this court.

## II.    Standard of Review

Local Rule 7.4 for the United States District Court for the Western District of Michigan

states:

> Generally, and without restricting the discretion of the Court, motions for
> reconsideration which merely present the same issues ruled upon by the Court
> shall not be granted.  The movant shall not only demonstrate a palpable defect by
> which the Court and the parties have been misled, but also show that a different
> disposition of the case must result from a correction thereof.

W.D. Mich. L.Civ.R. 7.4(a).  As this court previously noted, "a motion for reconsideration may

not be used to raise issues that could have been raised in the previous motion, or to introduce

evidence which could have been proffered during the pendency of a summary judgment motion."

*Aero-Motive Co. v. Great American Ins.*, 302 F.Supp.2d 738, 740 (W.D. Mich. 2003).  A motion

for reconsideration may be treated as a motion pursuant to Fed. R. Civ. P. 59(e) to alter or amend

the judgment. *See Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). Such motions may be granted where "there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp Inc.v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

However, documents filed late do not constitute "newly discovered evidence" for purposes of a motion for reconsideration. *See e.g., School Dist. No. 1J, Multnomah Cty., Or. v. AC and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (noting that "[t]he overwhelming weight of authority is that the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence'"). In addition, as several courts have noted, "[a] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)); *see also, Columbia Gas Transmission Corp. v. Zeigler*, 83 F. App'x 26, 31 (6th Cir. 2003); *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998).

## IV. Analysis

### A. Removal and Federal Court Jurisdiction

28 U.S.C. § 1441 governs the removal of actions generally. That statute states in relevant part:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. . . .
> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United

States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. . . .

28 U.S.C. § 1441(a)-(b). Further, 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The defendant seeking removal has the burden of proving jurisdiction in the district court. *See Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369 (6th Cir. 2007). Further, as this court noted in its memorandum granting the Plaintiff's motion to remand, " '[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts resolved in favor of remand.'" *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-550 (6th Cir. 2006) (quoting *Brown v. Francis*, 75 F.3d 860, 864-65 (3d Cir. 1996)). In addition, "[w]hen addressing the removability issues, a trial court is urged to resolve all disputed questions of fact in favor of the non-removing party." *Lyons v. U.S. Steel Corp.*, No. 09-12097, 2010 WL 374016, *1 (E.D. Mich. Jan. 25, 2010) (citing *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)).

Defendants removed the case to this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441(b) alleging federal question jurisdiction because Plaintiff's complaint relates to rights arising under the terms of a group long-term disability insurance policy governed exclusively by ERISA, 29 U.S.C. § 1001 *et seq.* Defendants allege that because Plaintiff claims to be the beneficiary of an "employee benefit plan" as that term is defined under ERISA, his remedy lies solely with ERISA, 29 U.S.C. § 1132(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B) provides that:

A civil action may be brought–
(1) by a participant or beneficiary–
. . .
        (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . .

29 U.S.C. § 1132(a)(1)(B).  ERISA defines an employee welfare benefit plan, in relevant part, as

        any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1).  ERISA applies to employee benefit plans "established or maintained by any employer engaged in commerce or in any industry or activity affecting commerce . . ." 29 U.S.C. § 1003(a)(1).  Governmental plans, among others, are excluded from coverage under ERISA.  29 U.S.C. § 1003(b)(1).

        Defendants further argue that Plaintiff's claims in tribal court are pre-empted by ERISA and that the tribal court has no jurisdiction over such claims.  29 U.S.C. § 1144(a) states in part, ". . . the provision of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."

        Further, 28 U.S.C. § 1132(e) provides:

        (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.  State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

28 U.S.C. § 1132(e). Citizenship of the parties does not affect the jurisdiction of the district courts. "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action." 29 U.S.C. § 1132(f).

There are two essential considerations at issue here. The first, raised in plaintiff's initial motion for remand, is whether removal was improper because 28 U.S.C. § 1441 allegedly does not provide for removal from tribal court. This question further implicates whether Plaintiff's claims are ERISA claims. The second major issue to be resolved is whether, despite this court having jurisdiction over Plaintiff's claims, the court must remand the case to tribal court for the tribal court to determine its own jurisdiction. Plaintiff relies on the theory of tribal exhaustion and comity in support of his position regarding remand.

**B.      ERISA Coverage of Tribal Benefit Plans**

**1.      Whether the 2006 Amendment to ERISA Applies Retroactively**

In 2006 Congress amended ERISA to exclude tribal benefit plans from ERISA's coverage. ERISA excludes "governmental plans" from coverage. *See* 29 U.S.C. § 1003(b)(1). Congress amended the definition of "governmental plan" to include:

> a plan which is established and maintained by an Indian tribal government . . . a subdivision of an Indian tribal government . . . or an agency or instrumentality of either, and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities.

29 U.S.C. § 1002(32). However, this amendment was included as § 906 of the overall Pension Protection Act, Pub. L. No. 109-280, 120 Stat. 780 (2006), and at least one federal district court

has found that this amendment does not apply retroactively.  *Dobbs v. Anthem Blue Cross and Blue Shield*, No. 04-cv-02283-LTB, 2007 WL 2439310, *3 (D. Col. Aug. 23, 2007).  The notes to 29 U.S.C. § 1002(32) indicate that "Amendments by Pub.L. 109-280, § 906, [are] applicable to any year beginning on or after Aug. 17, 2006, see Pub.L. 109-280, § 906(c), set out as a note under 26 U.S.C.A. § 414."  In *Dobbs* the plaintiff's complaint had been dismissed prior to the 2006 amendment, so the district court found that "[h]olding the [plaintiff's] plan retroactively exempt from ERISA would materially alter the rights, duties, and liabilities of the parties in this case."  *Id.* at *3.

In this case the Plaintiff's complaint was filed after the 2006 amendment.  *See* Complaint. However, his claims are based on allegations of consistent underpayments for many years, most of which occurred prior to the 2006 amendments.  In *Lockheed Corp. v. Spink*, the U.S. Supreme Court addressed whether amended provisions of ERISA relating to discrimination in pension plans on the basis of age applied retroactively.  517 U.S. 882, 116 S.Ct. 1783 (1996).  The Supreme Court determined that the amendment was not retroactive.  *Id.* at 896-97, 116 S.Ct. at 1792-93.  The Court noted that the note to the amendment at issue in that case expressly stated that the amendments should only apply to plan years beginning after a certain date.  *Id.* (citing 29 U.S.C. § 623 note).  The Court thus concluded that "[t]his language compels the conclusion that the amendments are prospective."  *Id.*  It further noted, "[w]hen Congress includes a provision that specifically addresses the temporal effect of a statute, that provision trumps any general inferences that might be drawn from the substantive provisions of the statute."  *Id.* at 897, 116 S.Ct. at 1793 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037 (1992)).  Thus, applying the reasoning of *Spink* to this case, it appears that the 2006

Amendment to ERISA is prospective only and does not apply to the vast majority of Plaintiff's claims of underpayment. However, Plaintiff argues that the 2006 ERISA Amendment only served to codify the existing federal common law that considered benefit plans covering tribal governmental employees to be beyond the scope of ERISA.

## 2.    Application of ERISA to Tribal Benefit Plans

Several other courts have determined that tribal benefit plans, prior to the 2006 amendment, were governed by ERISA. For example, in *Smart v. State Farm Ins. Co.*, the Seventh Circuit addressed whether a claim for unpaid medical expenses by an employee of the Chippewa Health Center owned and operated by the Chippewa Tribe was covered by ERISA. 868 F.2d 929 (7th Cir. 1989). The defendant insurance company had issued the health center a group health policy. *Id.* at 930. The court analyzed the issue in the following way:

> The issue before us is whether Congress intended ERISA to include an employment benefit plan which is established and maintained by an Indian Tribe employer for the benefit of Indian employees working at an establishment located entirely on an Indian reservation. Congressional intent is paramount in determining the applicability of a statute to Indian Tribes. On its face ERISA fails to reveal Congress' intent as to the Act's applicability to Indian Tribe employers. . . .

> The general rule, pronounced in *Federal Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 116, 80 S.Ct. 543, 553, 4 L.Ed.2d 584 (1960), is that a "general statute in terms applying to all persons includes Indians and their property interests." *Tuscarora* presumes that when Congress enacts a statute of general applicability, the statute reaches everyone within federal jurisdiction not specifically excluded, including Indians and Tribes.

> But there is a significant *caveat* to the *Tuscarora* rule. Statutes of general application that would modify or affect Indian or Tribal rights sustained by treaty or other statute must specifically evince Congress' intent to interfere with those rights before a federal court will construe the statute in issue against those rights . . . . In *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113 (9th Cir. 1985), the Ninth Circuit, after accepting the general rule of *Tuscarora*, then identified

three specific scenarios when the exception would arise:

> A federal statute of general applicability that is silent on the issue
> of applicability to Indian Tribes will not apply to them if: (1) the
> law touches "exclusive rights of self-governance in purely
> intramural matters"; (2) the application of the law to the tribe
> would "abrogate rights guaranteed by Indian treaties"; or (3) there
> is proof "by legislative history or some other means that Congress
> intended [the law] not apply to Indians on their reservations . . ."
> In any of these three situations, Congress must *expressly* apply a
> statute to Indians before we will hold that it reaches them.

*Smart v. State Farm Ins. Co.*, 868 F.2d 929, 932-33 (7th Cir. 1989) (quoting *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir. 1985)) (other citations omitted).  The Seventh Circuit determined that ERISA is a statute of general application and that none of the exceptions to Indian tribal coverage were applicable.  *Id.* at 934-36.

In explaining the narrow exception relating to the "exclusive rights of self-governance in purely intramural matters," the Ninth Circuit explained that "the tribal self-government exception is designed to except purely intramural matters such as conditions of tribal membership, inheritance rules, and domestic relations from the general rule that otherwise applicable federal statutes apply to Indian tribes."  *Donovan*, 751 F.2d at 1116.  In that case the Ninth Circuit determined that the commercial operation of a produce stand selling produce to non-tribal members was not an aspect of tribal self-governance such that OSHA inspectors should be excluded.  *Id.*

In *Lumber Industry Pension Fund v. Warm Springs Forest Products Industries*, the Ninth Circuit addressed whether ERISA applied to a tribally-owned and operated sawmill.  939 F.2d 683 (9th Cir. 1991).  The court held that ERISA applied to the sawmill and that the tribal self-governance exception did not apply because the tribe's decision-making power was not usurped.

*Id.* at 685.  The court relied on *Donovan* for the proposition that tribal business and commercial activities were not within the self-governance exception.  *Id.* at 685 (citing *Donovan*, 751 F.2d at 1116).

Other courts have examined whether additional federal laws, arguably of general application, apply to Indian tribes.  For example, in *Reich v. Great Lakes Indian Fish and Wildlife Comm.*, the Seventh Circuit distinguished both *Smart* and *Lumber Industry Pension Fund* in determining that an Indian government commission was exempt from the overtime requirements mandated by the federal Fair Labor Standards Act ("FLSA").  4 F.3d 490 (7th Cir. 1993).  The court analogized the Indian police officers to other government police officers, who are exempt from the overtime provisions of the FLSA.  *Id.* at 494.  In determining that the FLSA did not apply to the police officers of the Indian fish and wildlife commission, the Seventh Circuit noted:

> We realize that other general federal statutes regulating employment, notably ERISA and OSHA, have been applied to Indian agencies when, as in the present case, no treaty right was at stake.  But the employees in those cases were engaged in routine activities of a commercial or service character, namely lumbering and health care, rather than of a governmental character.  They were not law enforcement officers, who if they had been employed by a state or local government would have been exempt from the law. . . . We do not hold that employees of Indian agencies are exempt from the Fair Labor Standards Act.  We hold only that those agencies' law-enforcement employees, and any other employees exercising governmental functions that when exercised by employees of other governments are given special consideration by the Act, are exempt.  We have the support of the *Cherokee Nation* case, cited earlier.  Noting that Title VII of the Civil Rights Act of 1964 explicitly exempts Indian tribes but that the Age Discrimination in Employment Act does not, the Tenth Circuit held that it would read the Indian tribal exemption into the latter statute.  The court was rectifying an oversight.  We do the same today, actuated by the same purpose of making federal law bear as lightly on Indian tribal prerogatives as the leeways of statutory interpretation allow.

4 F.3d at 495-96 (citing *Smart*, 868 F.2d at 933-36; *Lumber Industry Pension Fund*, 939 F.2d

683; *Equal Employment Opportunity Commission v. Cherokee Nation*, 871 F.2d 937 (10th Cir.

1989)) (other citations omitted). The Seventh Circuit further distanced itself from dicta in its

*Smart* decision:

> Our dictum in *Smart* . . . , that "federalism uniquely concerns States; there simply
> is no Tribe counterpart," goes too far. Indian tribes, like states, are quasi-
> sovereigns entitled to comity. Comity argues for allowing the Indians to manage
> their own police as they like, even though no treaty confers such prerogatives,
> until and unless Congress gives a stronger indication than it has here that it wants
> to intrude on the sovereign functions of tribal government.

*Great Lakes Indian Fish and Wildlife Comm.*, 4 F.3d at 495 (citing *Smart*, 868 F.2d at 936).

In determining whether other general application statutes apply to Indian tribes, other

federal courts have analyzed the nature of the tribal entities involved and the nature of the dispute

at issue. For instance, in *Equal Employment Opportunity Comm. v. Fond du Lac Heavy Equip.*

*and Const. Co., Inc.*, the Eighth Circuit held that the Age Discrimination in Employment Act did

not apply to the tribal situation confronting the court. 986 F.2d 246, 249 (8th Cir. 1993). The

court noted that the dispute centered around an Indian applicant and a tribal employer. *Id.* It

determined that "[f]ederal regulation of the tribal employer's consideration of age in determining

whether to hire the member of the tribe to work at the business located on the reservation

interferes with an intramural matter that has traditionally been left to the tribe's self-

government." *Id. See also, Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 180 (2d Cir.

1996) (determining that OSHA regulations applied to Indian construction company with

activities of a commercial nature and not a governmental nature); *Florida Paraplegic Assoc., Inc.*

*v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126, 1129-34 (11th Cir. 1999) (finding that

tribal restaurant and casino were commercial enterprises which were not exempt from provisions of Americans with Disabilities Act, but that tribal sovereign immunity applied). In addition, it is true that not all federal statutes are alike. *See Morales v. Showell Farms, Inc.*, 910 F.Supp. 244, 248 (M.D.N.C. 1995) (noting that "[i]n contrast to the sweeping pre-emptive provision of Section 502(a) of ERISA, the FLSA has a relatively narrow pre-emptive effect").

In his reply brief in support of the motion to remand, Plaintiff asserted that the 2006 Amendment to ERISA that excludes certain tribal benefit plans from ERISA as "government plans" merely served to codify a distinction that courts had already made through the case law. Plaintiff asserts that federal courts have noted the distinction between commercial tribal entities and purely governmental entities, citing *Smart*. Plaintiff further asserted in his reply brief that his employment was a purely governmental one in which he engaged in "essential governmental functions."

In this case the parties disagree regarding the substance of Plaintiff's duties as an employee of KBIC. Defendant attempts to demonstrate, with belatedly filed evidence, that Plaintiff worked for a "travel" and housing center. [Court Doc. Nos. 58-2, 58-3]. In response to the motion for reconsideration, Plaintiff has filed the Affidavit of Susan Lafernier, a member of the KBIC Tribal Council. [Court Doc. No. 60-2, Affidavit of Susan Lafernier ("Lafernier Aff.")]. Her affidavit asserts that the KBIC has never operated or owned a "travel" center, but does maintain a "tribal" center. *Id.* at ¶ 3. She further asserts that Plaintiff worked for the Keweenaw Bay Ojibwa Housing Authority, which is a "non-profit entity created by the KBIC Tribal Council to serve the housing needs of low income tribal members living on the L'Anse Federal Indian Reservation." *Id.* at ¶ 4. Thus, Plaintiff appears to be arguing that his work for

-13-

KBIC is analogous to the governmental exclusion outlined in the case law analyzed *supra*. Upon a motion for remand, the facts must be construed in the light most favorable to the party opposing federal court jurisdiction. *Lyons*, 2010 WL 374016 at *1. The court concludes that significant questions of fact still remain regarding whether the Plan is an ERISA plan or is a governmental plan excluded from ERISA.

### C.    Exhaustion of Tribal Remedies

### 1.    Tribal Exhaustion Doctrine

Even if this court were to conclude that the Policy is an ERISA plan, another issue must also be addressed. This issue is the subject of Defendant's counterclaim and is raised in Plaintiff's motion to dismiss the counterclaim. Assuming that this court has jurisdiction over Plaintiff's claims pursuant to ERISA, the court must also determine that the Defendants are not required to exhaust their remedies in tribal court prior to maintaining an action in this court.

As the Ninth Circuit explained:

> Our analysis of the tribal court's jurisdiction starts with the Supreme Court's decision in *Montana*, a "pathmarking case concerning tribal authority of nonmembers." In *Montana*, the Court found that tribal courts have two bases for their authority. First, tribes possess inherent power "necessary to protect tribal self-government [and] to control internal relations." This includes the inherent power "to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. Second, tribes possess such additional authority as Congress may expressly delegate.

*Smith v. Salish Kootenai College*, 434 F.3d 1127, 1130 (9th Cir. 2006) (quoting *Montana v. United States*, 450 U.S. 544, 564, 101 S.Ct. 1245 (1981) and *Strate v. A-1 Contractors*, 520 U.S. 438, 445, 117 S.Ct. 1404 (1997).

The tribal exhaustion doctrine was outlined by the U.S. Supreme Court in *National*

*Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447 (1985). In that case a motorcyclist hit a young Crow Indian boy in an elementary school parking lot on land owned by the state within the boundaries of the Crow Indian Reservation. *Id.* at 847, 105 S.Ct. at 2449. The child's guardian initiated a lawsuit in tribal court against the school district. *Id.* The school district failed to answer the complaint, and the tribal court entered a default judgment against the state school district. The defendant insurance company and the school district filed a complaint and a motion for a temporary restraining order in federal district court. The district court granted the motion and issued an order restraining the defendants from attempting to enforce the tribal court's default judgment. *Id.* The district court later granted the school district and insurance company a permanent injunction, claiming that the tribal court lacked jurisdiction over the initial personal injury. *Id.* at 848-49, 105 S.Ct. at 2449.

The Supreme Court held that 28 U.S.C. § 1331 "encompasse[d] the federal question whether a tribal court has exceeded the lawful limits of its jurisdiction," but it further held that exhaustion of tribal remedies was required before a federal court could address such a claim. *Id.* at 857, 105 S.Ct. at 2554. In explaining the tribal exhaustion doctrine, the Court stated:

> . . . the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of the

kind of "procedural nightmare" that has allegedly developed in this case will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made. Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.

*Id.* at 856-57, 105 S.Ct. at 2453-54. In *National Farmers Union* the Supreme Court recognized

three general exceptions to the tribal exhaustion rule:

We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith,"or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

*Id.* at 856, n. 21, 105 S.Ct. at 2454, n. 21 (quoting *Juidice v. Vail*, 430 U.S. 327, 338, 97 S.Ct.

1211, 1218 (1977)). A federal court may review a tribal court's determination that it has

jurisdiction over an action. *See Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971

(1987). In that lawsuit based on diversity jurisdiction pursuant to 28 U.S.C. § 1332, the Supreme

Court held that the exhaustion rule explained in *National Farmers Union* applied in a case based

on diversity jurisdiction as well. *Id.* at 16-17, 107 S.Ct. at 976-77. The rules pertaining to

exhaustion are based on comity and are prudential rather than jurisdictional. *See id.* at 15, 107

S.Ct. at 976; *Strate v. A-1 Contractors*, 520 U.S. 520 U.S. 438, 450-51, 453, 117 S.Ct. 1404,

1411-13 (1997).

There are limits to the scope of a tribal court's jurisdiction. In *Strate v. A-1 Contractors*

the Supreme Court addressed whether a tribal court maintained jurisdiction over non-tribal

member defendants in a personal injury action occurring on a state-maintained highway running

through an Indian reservation. 520 U.S. 438, 442, 117 S.Ct. 1404, 1407 (1997). In that case the

Supreme Court described the general rule that

> absent a different congressional direction, Indian tribes lack civil authority over
> the conduct of nonmembers on non-Indian land within a reservation, subject to
> two exceptions.  The first exception relates to nonmembers who enter consensual
> relationships with the tribe or its members; the second concerns activity that
> directly affects the tribe's political integrity, economic security, health, or welfare.

*Id.* at 446, 117 S.Ct. at 1409-10.  In *Strate* the Supreme Court determined that the tribal court did

not have jurisdiction over what constituted a "commonplace state highway accident claim."  *Id.*

at 459, 117 S.Ct. at 1412.  The *Strate* Court further added an additional tribal exhaustion doctrine

exception.  The Court noted:

> [W]hen, as in this case, it is plain that no federal grant provides for tribal
> governance of nonmembers' conduct on land covered by *Montana's* main rule, it
> will be equally evident that tribal courts lack adjudicatory authority over disputes
> arising from such conduct. . . . Therefore, when tribal-court jurisdiction over an
> action such as this one is challenged in federal court, the otherwise applicable
> exhaustion requirement, must give way, for it would serve no purpose other than
> delay.

*Strate*, 520 U.S. at 459 n.14, 117 S.Ct. at 1416 n. 14 (citing *Montana v. United States*, 450 U.S.

544, 101 S.Ct. 1245 (1981)); *see also, Nevada v. Hicks*, 533 U.S. 353, 369, 121 S.Ct. 2304, 2315

(2001).

Defendants rely on *Nevada v. Hicks* in support of their argument that there is no need to

exhaust tribal remedies in this action.  533 U.S. 353, 121 S.Ct. 2304 (2001).  In *Nevada v. Hicks*

the Supreme Court addressed whether a "tribal court may assert jurisdiction over civil claims

against state officials who entered tribal land to execute a search warrant against a tribe member

suspected of having violated state law outside the reservation."  *Id.* at 355, 121 S.Ct. 2308.  The

respondent was a tribal member who brought suit against several state and tribal defendants

pursuant to 42 U.S.C. § 1983, claiming that defendants had damaged his stuffed sheep heads

while executing a search warrant in his home to investigate the alleged killing of protected

California bighorn sheep. *Id.* The Supreme Court outlined its reasoning regarding what

protections are needed to enhance tribal sovereignty:

> In *Strate*, we explained that what is necessary to protect tribal self-government
> and control internal relations can be understood by looking at the examples of
> tribal power to which *Montana* referred: tribes have authority "[to punish tribal
> offenders,] to determine tribal membership, to regulate domestic relations among
> members, and to prescribe rules of inheritance for members," . . . Tribal assertion
> of regulatory authority over non-members must be connected to that right of the
> Indians to make their own laws and be governed by them. . . .
> Our cases make clear that the Indians' right to make their own laws and be
> governed by them does not exclude all state regulatory authority on the
> reservation. State sovereignty does not end at a reservation's border.

533 U.S. at 360-61, 121 S.Ct. at 2311 (quoting *Strate*, 520 U.S. at 459, 117 S.Ct. at 1404

(brackets in original) (citing *Montana v. United States*, 450 U.S. 544, 564, 101 S.Ct. 1245,

(1981)). The court held that the tribal court had no jurisdiction over Section 1983 claims and

that requiring the state and tribal defendants to defend their claims in tribal court "would serve no

purpose other than delay." *Nevada*, 533 U.S. at 369, 121 S.Ct. at 2315. In determining that the

tribal court had no jurisdiction over the Section 1983 claims, and that therefore there was no need

to exhaust tribal remedies, the Court explained:

> Tribal courts, it should be clear, cannot be courts of general jurisdiction in this
> sense, for a tribe's inherent adjudicative jurisdiction over nonmembers is at most
> only as broad as its legislative jurisdiction. It is true that some statutes proclaim
> tribal-court jurisdiction over certain questions of federal law. But no provision in
> federal law provides for tribal-court jurisdiction over § 1983 actions.
> Furthermore, tribal-court jurisdiction would create serious anomalies, as the
> Government recognizes, because the general federal-question removal statute
> refers only to removal from *state* court, see 28 U.S.C. § 1441. Were § 1983
> claims cognizable in tribal court, defendants would inexplicably lack the right
> available to state-court § 1983 defendants to seek a federal forum. The
> Government thinks the omission of reference to tribal courts in § 1441
> unproblematic. Since, it argues, "[i]t is doubtful . . . that Congress intended to

> deny tribal court defendants the right given state court defendants to elect a
> federal forum for the adjudication of causes of action under federal law," we
> should feel free to create that right by permitting the tribal-court defendant to
> obtain a federal-court injunction against the action, effectively forcing it to be
> refiled in federal court.  The sole support for devising this extraordinary remedy is
> *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 119 S.Ct. 1430, 143 L.Ed.2d
> 635 (1999), where we approved a similar procedure with regard to claims under
> the Price-Anderson Act brought in tribal court. . . . Surely the simpler way to
> avoid the removal problem is to conclude (as other indications suggest anyway)
> that tribal courts cannot entertain § 1983 suits.

*Nevada*, 533 U.S. 368-69, 121 S.Ct. at 2314-15.

Defendants also rely on *Neztsosie*, cited by the Supreme Court in *Nevada* for their

assertion that exhaustion of claims in tribal court is not required.  526 U.S. 473, 119 S.Ct. 1430

(1999).  In *Neztsosie* the original plaintiffs were members of the Navajo nation who brought tort

claims in a tribal court against a natural gas company, asserting that the company's uranium

mines contaminated the plaintiffs' drinking water, causing them severe injuries.  The defendant

companies filed suit in federal district court seeking to enjoin the plaintiffs from pursuing their

claims in the tribal court.  *Id.* at 477-78, 119 S.Ct. at 1434.  The Supreme Court reversed the

Ninth Circuit's determination that the tribal court could determine its own jurisdiction over

plaintiffs' claims, including any claims that were Price-Anderson Act claims, which were

designed to provide limited liability for nuclear incidents.  Relying on the broad removal

provision in the Price-Anderson Act, the Court noted that "Congress thus expressed an

unmistakable preference for a federal forum, at the behest of the defending party, both for

litigating a Price-Anderson claim on the merits and for determining whether a claim falls under

Price-Anderson when removal is contested."  *Id.* at 484-85, 119 S.Ct. at 1437.  The Court

reasoned:

> We are at a loss to think of any reason that Congress would have favored tribal
> exhaustion. Any generalized sense of comity toward nonfederal courts is
> obviously displaced by the provisions for preemption and removal from state
> courts, which are thus accorded neither jot not tittle of deference. The apparent
> reasons for this congressional policy of immediate access to federal forums are as
> much applicable to tribal-as to state-court litigation.

*Id.* at 486, 119 S.Ct. at 1438. The Court relied on indications in the Price-Anderson Act itself

that claims involving nuclear incidents should be consolidated where possible and resolved

promptly and efficiently and that tribal exhaustion would defeat those goals. *Id.* The Court

concluded that the "comity rationale for tribal exhaustion normally appropriate to a tribal court's

determination of its jurisdiction stops short of the Price-Anderson Act" and that the federal

district court should have decided whether the plaintiffs' claims arose under the Price-Anderson

Act. *Id.* at 487-88, 119 S.Ct. at 1439.

Although it may be that the rationale applicable in *Neztsosie* applies to cases arising

under ERISA, the parties disagree regarding whether this is an ERISA action. Further, the

parties have not directed this court to any authority that definitively applies the *Neztsosie*

rationale to ERISA actions filed in tribal court. Where the law is still unclear on this issue, the

court concludes that the lack of clarity in the law weighs in favor of granting the remand as the

Defendants bear the burden of proof on removal questions.

## 2. Removal of ERISA Claims from Tribal Court

Defendants argue that because this action is clearly an action involving a federal question,

28 U.S.C. § 1441(a) does not apply and only 28 U.S.C. § 1441(b) is relevant. 28 U.S.C. §

1441(a) specifically limits removal from "State courts," with no mention of other tribunals, such

as tribal courts. 28 U.S.C. § 1441(b) does not refer to removal from only state courts, but

discusses removal within the context of actions involving claims founded on federal statutes,

treaties, or the Constitution. Therefore, Defendants' argument makes some semantic sense.

However, other district courts have interpreted the removal statute differently. For

example, in *Weso v. Menominee Indian Sch. Dist.*, the district court discussed removal of an

action brought under federal law in tribal court. 915 F.Supp. 73 (E.D. Wis. 1995). In that case

the district court rejected an argument similar to the one Defendants are making in this case.

> The defendants argue that removal of this action from the tribal court is proper despite the limitation under 28 U.S.C. § 1441(a) that removal be had from "State court" because such limitation is not applicable to the removal of an action, like the one at hand, over which the court has federal question jurisdiction. According to the defendants, removal of an action involving a federal question is governed solely by the provisions of 28 U.S.C. § 1441(b) which contains no language authorizing removal jurisdiction only from state courts. The defendants insist that conditioning federal question removal upon satisfaction of § 1441(a) would render the provisions of § 1441(b) superfluous.

> In my opinion, neither the language of 28 U.S.C. § 1441 nor controlling case law supports the defendants' proposition. The statutory language of § 1441(a) makes its terms, including the state court requirement, applicable to *any* case of which the United States has original jurisdiction. This designation includes actions involving a federal question. Furthermore, contrary to the defendants' assertion, the language of § 1441(b) is not superfluous to the language of § 1441(a). Section 1441(b) provides that the citizenship and residence of the parties are immaterial to removal in federal question cases but highly relevant in other cases over which the court has original jurisdiction. This factor is not addressed in § 1441(a) . . . . Accordingly, I find that the state court prerequisite identified in § 1441(a) is applicable to actions purportedly removed under § 1441(b).

> . . . In my opinion, the statutory language of 28 U.S.C. § 1441(a) limiting removal to actions commenced in "State courts" does not extend to an action originally commenced in the Menominee Tribal Court. When Congress intended to extend § 1441 to an entity other than courts of the fifty states, it has done so expressly.

*Id.* at 75-76. *See also, Williams-Willis v. Carmel Financial Corp.*, 139 F.Supp.2d 773 (S.D.

Miss. 2001) (granting motion to remand plaintiff's claims of fraud to tribal court, despite

defendant's assertion that claims arose under federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*).

When addressing remand to tribal court where jurisdiction is based on diversity, other courts have also concluded that "State courts" do not include tribal courts under 28 U.S.C. § 1441(a).  For example, in *Gourneau v. Love*, the district court examined the meaning of 28 U.S.C. § 1441(a):

> There is no ambiguity in the text of 28 U.S.C. § 1441: it refers specifically to state courts, and to state courts only.
>
> When adherence to the plain terms of a statute would lead to an absurd result, the court can look to the intent of Congress and interpret the statute to fulfill that intent and avoid the absurd result.  Not permitting removal from tribal courts while permitting removal from state courts may seem to be a questionable policy, but it is not an absurdity.  Furthermore, even if congressional intent were to be considered, it appears that Congress understands § 1441 to refer only to state courts in the strict sense, as when Congress has decided to bring other non-federal trial courts within the ambit of § 1441, it has enacted legislation expressly doing so. . . . Congress has never enacted legislation either bringing tribal courts within the meaning of "State court" in § 1441 or separately authorizing the removal of actions brought in tribal courts.
>
> To the extent that this is a close question, it must be resolved against removal in light of the United States Supreme Court's opinion in *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

915 F.Supp. 150, 152-53 (D. N.D. 1994).  *See also, Williams-Willis*, 139 F.Supp.2d at 777 (noting additional reason for remand of plaintiff's claims to be tribal exhaustion rule); *Becenti v. Vigil*, 902 F.2d 777 (10th Cir. 1990) (analyzing meaning of state courts in analogous provision of 28 U.S.C. § 1442(a) and determining that tribal courts do not fall within the meaning of state courts in that provision).

Both parties acknowledge only one case which discusses tribal court jurisdiction over

-22-

ERISA claims explicitly.  *See White Tail v. Prudential Ins. Co. of America*, 915 F.Supp. 153 (D. N.D. 1995).  In that case the plaintiff brought suit in tribal court seeking a declaratory judgment regarding the scope of coverage under an accidental death and dismemberment plan.  *Id.* at 153. The parties agreed that ERISA covered the issues raised in the action.  *Id.*  The defendant insurer removed the case to federal district court, and as in this case, the plaintiff moved to remand the action to tribal court.  Relying in part on *Becenti*, the magistrate judge in *White Tail* concluded:

> The underlying issue in this action is whether Congress intended tribal courts to be included in the jurisdiction section of ERISA along with federal courts and state courts.  *See* 29 U.S.C. § 1132(e).  Because this court has held that Defendant's removal was improper, the question of whether the tribal court has jurisdiction to hear the ERISA claim is not before this court.  Even if it were this court would allow the tribal court an opportunity to determine the scope of its jurisdictional powers as a matter of comity.

*Id.* at 155.

Defendants argue that *White Tail* is merely an outlier case and that no other court has commented on tribal court jurisdiction over ERISA claims.  It is true that *White Tail* predates the Supreme Court's decision in *Neztsosie*, 526 U.S. 473.  ERISA is analogous to the carefully-outlined federal consolidation scheme under the Price-Anderson Act outlined in *Neztsosie*.  In *Neztsosie* the Supreme Court relied upon the "the unusual preemption provision, see 42 U.S.C. § 2014(hh)," under which "the Price-Anderson Act transforms into a federal action 'any public liability action arising out of or resulting from a nuclear incident,' § 2210(n)(2)."  526 U.S. at 484, 119 S.Ct. at 1437.  In a footnote, the Court then compared the preemption provision of the Price-Anderson Act to the complete preemption doctrine under ERISA:

> This structure, in which a public liability action becomes a federal action, but one decided under substantive state-law rules of decision that do not conflict with the Price-Anderson Act . . . resembles what we have spoken of as " 'complete pre-

emption' doctrine," see *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), under which "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,'" *ibid.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)).  We have found complete preemption to exist under . . . [ERISA].

*Id.* at 484, 485 n.6, 119 S.Ct. at 1437 n.6.  In *Metropolitan Life Ins. Co.* the Supreme Court held that Congress had so "completely pre-empted" the particular area relating to employee benefit claims that "causes of action within the scope of the civil enforcement provisions of § 502(a) [were] removable to federal court."  481 U.S. at 63, 66, 107 S.Ct. at 1546, 1548.

It is true that the jurisdictional provision of ERISA does not say anything about ERISA claims brought in any forums other than state or federal courts.  It states in relevant part:

Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.  State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

29 U.S.C. § 1132(e)(1).  The Act says nothing about tribal court jurisdiction over claims for unpaid benefits.

However, at least one other unpublished district court opinion addresses tribal court jurisdiction over ERISA claims.  In *Koopman v. Forest County Potawatomi Member Benefit Plan*, the district court addressed whether to stay an ERISA action pending adjudication of the issues by the tribal court.  No. 06-C-163, 2006 WL 1785769 (E.D. Wis. June 26, 2006).  In dismissing the case without prejudice the district court noted:

. . . the question presented is not whether this court could, in the abstract, decide

-24-

disputed questions regarding an ERISA plan. Instead, the question is whether, under the principles of comity set forth in *LaPlante* and *National Farmers Union Ins. Co. . . .*, this court should rule on the issues raised by this lawsuit or whether it should defer to the tribal court.

It is clear that this case presents a paradigmatic opportunity to defer to the tribal court. Although the plaintiffs attempt at times to portray this case as a simple dispute over ERISA benefits, it is clear from the filings that it is anything but. Instead, the case raises substantial questions about the role of the Tribe's General Council (which consists of all of the Tribe's voting members), the tribal constitution, the authority of the tribal leaders, the Tribe's employment practices, and even the Tribe's ability to retain counsel to represent it. . . .

Thus, the motion to intervene underscores the fact that this lawsuit–ostensibly a simple dispute about a health benefit plan–has the potential to blossom into a wide-ranging case about the tribal constitution, the role of the Council and the powers of tribal authorities. These are matters best left to the Tribe's courts themselves.

*Id.* at *1-2. Thus, the district court determined that the case involved "substantial issues of tribal governance" and tribal "internal political affairs," which made the tribal exhaustion doctrine particularly applicable. *Id.* at *3. The court in *Koopman* relied on *Prescott v. Little Six, Inc.* for support of its position on tribal exhaustion. *See id.* at *3 (citing *Prescott v. Little Six, Inc.*, 897 F.Supp. 1217, 1222 (D. Minn. 1995)).

In *Prescott* the district court addressed whether it should allow a tribal court to determine whether it had jurisdiction over plaintiffs' ERISA claims before proceeding to address those claims in federal court. The court ruled that "[t]he tribal court presumptively has jurisdiction to determine whether [defendant's] plans are valid ERISA plans" and order the parties to contest the validity of the plans in tribal court. 897 F.Supp. at 1224. In discussing tribal court jurisdiction over possible ERISA plans, the court noted:

Although federal courts have exclusive jurisdiction to award equitable relief under 29 U.S.C. § 1132(a)(3), federal courts do not have exclusive jurisdiction to

-25-

determine whether an ERISA plan exists or whether benefits were wrongfully denied. The Eighth Circuit has recently explained:

> ERISA nowhere makes federal courts the exclusive forum for deciding the ERISA status *vel non* of a plan or fiduciary . . . . Until [plaintiff] has proven its allegation that ERISA applies, questions of preemption and exclusive federal jurisdiction do not enter this case. Until the preliminary issue of ERISA status is decided, [plaintiff] may not seek the exclusive federal protections available to an ERISA plan.

> *International Assoc. of Entrepreneurs of America v. Angoff*, 58 F.3d 1266, 1269 (8th Cir. 1995), *reh'g denied*, (Aug. 4, 1995). *Angoff* concluded that the state court had jurisdiction to determine in the first instance whether an ERISA plan actually existed, despite the fact that plaintiff sought exclusively federal relief under 29 U.S.C. § 1132. Thus this Court does not have exclusive jurisdiction to determine whether [defendant's] alleged ERISA plans are valid. This is especially significant in this case, where the validity of the plans appears to be the dispositive question. As a result, ERISA does not expressly bar the tribal court from considering whether [defendant's] benefit plans are valid ERISA plans.

897 F.Supp. at 1222.

In their motion for reconsideration, the Defendants failed to address the question of removal from tribal courts. They described the *White Tail* decision as an anomaly in their prior filings, but do not identify any countervailing authority or any recent change in the law. The court concludes, as it concluded in its October 14, 2008 memorandum, that substantial questions regarding this court's jurisdiction remain. The court asked the parties at that time to supply additional briefing and evidence pertaining to the specific questions of ERISA coverage of tribal employees like Plaintiff, tribal exhaustion and comity doctrines, and the ability to remove cases filed in tribal court. Although Defendants have filed additional evidence in connection with their motion for reconsideration, it is unclear to the court why they could not have presented this evidence in accordance with the pertinent briefing schedule supplied in this action. *See* [Court

Doc. Nos. 39 and 54].

    As this memorandum demonstrates, jurisdiction in this case is a complicated matter, and even Defendants' additional evidence does not add much factual clarity to the record. Defendants have submitted additional evidence of in the form of the Affidavit of Thomas J. Vargo.  [Court Doc. No. 58-2].  Mr. Vargo asserts that he is familiar with the Policy and with the administrative record in this action.  *Id*. at ¶ 3.  However, the Defendants only provide this court with a minimal number of select pages from the administrative record which appears to be numbered in the hundreds of pages.  *See* [Court Doc. No. 58-4, labeled US618-US623].  Nor does this court have clear information regarding the types of activities conducted by the Plaintiff's former employer.  The parties recently filed evidence indicates that there is a dispute regarding what activities Plaintiff's employer conducted, i.e, running a "travel" center or a "tribal" center and a housing authority.  The court specifically addressed its need for such factual information in its memorandum and order from October of 2008.  [Court Doc. No. 20, pp. 6-7]. The court concludes that Defendants have failed to provide it with the undisputed factual underpinnings necessary to establish this court's ERISA jurisdiction.  It may well be that ERISA is implicated in this matter, but the court has no way of determining ERISA jurisdiction based on the evidence presented.

    For these reasons, the court concludes that the Defendants have not satisfied their burden that removal was proper in this case, and their motion for reconsideration will be **DENIED**.  This court concludes that Defendants have failed to sustain their burden under Fed. R. Civ. P. 59(e).

## IV.    Conclusion

    As explained in its prior order, the court has determined that it will **GRANT** Plaintiff's

-27-

motion for remand and **GRANT** Plaintiff's motion to dismiss Defendant Union Security's

counterclaim.  Defendants' motion for reconsideration will be **DENIED**.

A separate order will enter.


_____ */s/ R. Allan Edgar* _____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE